Jacksonville Paper Co. *v.* United States

**No. 6831.**—Invoices dated Gothenburg, Sweden, August 14, 1936, etc.
 Certified August 15, 1936, etc.
 Entered at Jacksonville, Fla., September 15, 1936, etc.
 Entry No. J–97, etc.

(Decided February 3, 1947)

*Ragland, Kurz & Layton* (*Louis Kurz* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil* and *Samuel D. Spector,* special attorneys), for the defendant.

Kincheloe, Judge: These appeals for reappraisement involve the market value of importations of kraft paper from Sweden by the Jacksonville Paper Co. at the port of Jacksonville, Fla., between September 13, 1936, and November 28, 1937. There are 17 appeals altogether, which were consolidated at the trial herein (R. 15).

The merchandise in the present instances is variously described on the invoices as "Unglazed pure Kraft wrapping paper," "Sack Kraft paper," "M. F. Kraft sack paper," "Unglazed (sack) Kraft paper," and "M. G. Pure special striped Grey Kraft." It is shown that "M. F." means machine finished and "M. G." means machine glazed.

In the case of reappraisements 124236–A to 124248–A, inclusive, and as to part of the paper in 125159–A, the importer made voluntary

additions to the invoice values upon entry to make what it considered was the true market value of the merchandise. In reappraisements 124236–A to 124246–A the merchandise was appraised at a value of 310 Swedish kronor per 1,000 kilos, packed, on the basis of foreign value. In reappraisements 124247–A to 124251–A and 125159–A the merchandise was appraised at a value of 406 Swedish kronor per 1,000 kilos, packed, foreign value. In addition, reappraisement 125159–A also covered an item invoiced as "M. G. Pure Special Striped Grey Kraft" at $69 per 2,000 pounds, less 2 per centum discount c. i. f. Jacksonville, entered at an advance of $0.702 per 100 pounds, and appraised at 421 Swedish kronor per 1,000 kilos, packed, also on the basis of foreign market value.

In Reap. Dec. 4670, involving the market value of certain machine-glazed kraft paper described on the invoices as "M. G. Kraft paper," imported from Sweden by the Arkell Safety Bag Co. during the years 1930 to 1934, inclusive, it was held that the home market in Sweden was a controlled market such as to preclude its consideration for the purpose of determining value, and that the export value of the merchandise was the proper basis. Such holding has been held in several subsequent reappraisement decisions on kraft paper from Sweden, and it is conceded in the present instance that the foreign value does not apply, so that the issue herein is therefore limited to the question of export value (R. 16).

On motion of counsel for plaintiff the record in the *Arkell* case, *supra* (Reap. Dec. 4670), has been incorporated herein (R. 16/18).

The importer has introduced in evidence as exhibit 1 an affidavit of Ludvid Lundquist, managing director of the Swedish Paper Mills' Association. On the subject of the export price or value of the merchandise in question, he states:

* * * the invoice prices paid by Jacksonville Paper Company for such paper as shown on the attached list, as far as can be judged from the material available, are the prices at which such paper was offered for sale and sold in the ordinary course of business in Sweden in wholesale quantities for export to the United States when the corresponding contracts were accepted. Affiant further says that there is no difference in the wholesale price of kraft paper so imported by Jacksonville Paper Company because of quantity purchased in excess of ten (10) tons, and that any quantity of paper so purchased during said period in excess of ten (10) tons would carry the same price per ton as quantities of ten (10) tons. * * *

\* \* \* \* \* \* \*

Affiant further says that invoice prices quoted from time to time during said period on such paper for export to the United States are subject to a discount of two per cent (2%) and to a deduction for inland freight, ocean freight, dock dues, wharfage and insurance premiums, and that the invoice prices for the shipments shown on the schedule hereto attached were subject to such deductions.

Mr. C. G. McGehee, president of the importing company, testified that the prices paid for this merchandise were based on quotations

from price lists of the Swedish Paper Mills' Association and from brokers representing the mills in New York, and that the prices shown on the invoices are the actual prices that the Jacksonville Paper Co. paid (R. 23). He also testified that jumbo rolls, i. e., rolls of more than 9 inches in diameter, are sold at a lower price than the smaller rolls, which are designated as counter rolls, and are used for wrapping-paper purposes in stores, whereas the jumbo rolls are used in the manufacture of bags. All the paper in question was jumbo rolls used for the manufacture of sacks and bags. Also that this paper was machine finished, not machine glazed (R. 27).

In regard to the notation made by the appraiser on the consular invoice in reappraisement 124247–A reading "Sulphite wrapping paper," appraised at 406 Swedish kronor, the witness stated that that was an error and should be sulphate, as "Sulphite is an entirely different process."

Upon the transfer of the case to New York, plaintiff introduced in evidence the affidavit of L. C. F. Rain, vice president of H. Reeve Angel & Co., Inc., which is engaged in the sale in the United States of various kinds of paper, including kraft paper, manufactured in Sweden, and which has an affiliated company in Gothenburg, Sweden (exhibit 2). This affidavit is to the effect that H. Reeve Angel & Co., Inc., sold to the plaintiff company the merchandise involved in these reappraisements, and that the prices at which these sales were made were not lower than the usual wholesale prices at which such paper was freely offered for sale in the principal markets of Sweden for export to the United States, less the 2 per centum discount, the said prices including inland and ocean freight, dock dues, wharfage, insurance, and packing.

Witness Joseph Goldstein testified in person to the effect that he is a partner in the brokerage firm of Paper Sales Agency Co., representing Swedish paper mills in the United States; that it is part of his business to keep in touch with market conditions and prices of paper from Sweden, and that he was familiar with same during the time of the present importations; that he sold to the Jacksonville Paper Co. the merchandise covered by reappraisement 124238–A; that he made other sales to the same company during the period covering April 1936 to October 1936; that his concern represented the mill of J. H. Munktells Pappersfabriks A/B Grycksbo, Sweden; that he sold jumbo rolls of kraft paper at $2.60 per 100 pounds, less 2 per centum cash discount; that counter rolls and jumbo rolls are identical in character, but that counter rolls carry a higher price; that he became familiar with the export prices in Sweden by receiving price lists, cable communications, and by trips to Sweden; that his firm has sold the Munktells paper to many customers in the United States, and that the prices at which sold were the prevailing prices in the principal

markets of Sweden for export to the United States, and that such prices were without any restrictions (R. 45); that the Jacksonville Paper Co. did not pay other than the invoice prices either to them or their principals; that there was no additional discount on large quantities of paper. The witness further stated that his records showed a shipment of unglazed, or M. F. kraft paper, jumbo rolls, to other than the Jacksonville Paper Co., billed at $2.60, and sheets at $2.70, covered by a consular invoice dated April 26, 1936; and another shipment of same character of merchandise to another customer in the United States on consular invoice dated May 12, 1936, at $2.60 for jumbo rolls; another shipment of jumbo rolls of same character at $2.60 and at $2.50, covered by consular invoice dated June 26, 1936; consular invoice dated July 6, 1936, part at $2.60 and another part at $2.70; an invoice dated August 27, 1936, at $2.75 for jumbo rolls; another invoice dated October 15, 1936, of same class of jumbo rolls at $2.75 (R.53/4). The witness further enumerated various other shipments of jumbo rolls and sheets of kraft paper to other customers than the Jacksonville Paper Co. between about November 9, 1936, and August 10, 1937, all at not more than the invoice prices in the present instances, and some at less.

On motion of plaintiff the record in Reap. Dec. 4742, involving a shipment of kraft paper from Sweden also by the Jacksonville Paper Co. was incorporated herein without objection (R. 59/60).

At this point the Government moved to dismiss these appeals for reappraisement on the ground that the importer has failed to make out a *prima facie* case, which motion was taken under advisement. This motion, however, is now overruled, with an exception to defendant.

On motion of the Government the records in Reap. Dec.'s 5087, 5206, and 5237 were incorporated herein, over the objection of counsel for the importer that it does not appear that the merchandise is identical, and that the records therefore are not material or relevant (R. 61).

As to the merchandise covered by reappraisement 124251–A, it is conceded by the Government that the correct export value for the merchandise is $4.25 per 100 pounds, less the 2 per centum discount and nondutiable charges, which corresponds to the entered value therein.

In the reappraisement cases, Reap. Dec.'s 5087, 5206, and 5237, incorporated at the request of the Government, I find that the merchandise covered thereby has reference to glazed kraft paper, variously invoiced as M. G. pure ribbed kraft paper, M. G. blue kraft, and M. G. light kraft, while the kraft paper covered by the *Jacksonville Paper Co.* case, Reap. Dec. 4742 (4 Cust. Ct. 662), as well as that covered by the cases now before me, consists entirely of unglazed kraft paper, with the possible exception of one item in reap-

praisement 125159–A. In the *Arkell Safety Bag Co.* case, *supra*, it was shown that machine-glazed kraft paper costs more than machine-finished (M. F.) kraft paper such as covered by said Reap. Dec. 4742. The said three incorporated records covering glazed kraft paper can, therefore, have no application to the present cases insofar as establishing export value is concerned. This leaves the evidence introduced by plaintiff entirely uncontradicted.

Upon the record, affidavits, and testimony herein, I therefore find and hold that during the period of these importations from Sweden there was no foreign value for such or similar merchandise at the time of exportation of the merchandise herein; that the proper basis for appraisement is the export value; that the export values thereof, as defined in section 402 (d) of the Tariff Act of 1930, are as per the unit invoice values of the merchandise, less 2 per centum cash discount, less inland and ocean freight, and insurance.

Judgment order will be rendered accordingly.